UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANTA TORI RIVERS,

        Plaintiff,

v.                      Case No. 8:07-cv-184-T-24TBM

SGT. LEONARDO DIAZ,
DEPUTY ANDREA EAGON,
DEPUTY MATTHEW LUCKEY,
DEPUTY CHRISTOPHER TUMINELLA,
JOHN DOES, in their individual and official
capacities,

        Defendants.

_____

## O R D E R

      This cause is before the Court on Defendants' motion for summary judgment (Doc.

No. 35) and Plaintiff Rivers' cross motion for summary judgment (Doc. No. 36).

      Plaintiff Shanta Tori Rivers, an inmate at the Federal Correctional Institution,

Williamsburg, Salters, South Carolina, filed a 42 U.S.C. § 1983 civil rights complaint on

January 26, 2007.  (Doc. No. 1).  He is proceeding on his amended complaint (Doc. No.

22) (hereinafter "Amended Complaint" or "Complaint") in which he raises four claims:

           Claim I alleges a federal cause of action under 42 U.S.C. § 1983 for
           deprivation of his rights under the Fourth and Fourteenth Amendments of the
           U.S. Constitution; specifically, unlawful arrest/false imprisonment, and
           malicious harassment against Defendants Eagon, Tuminella and Luckey
           stemming from a traffic stop that resulted in Rivers' arrest on September 9,
           2004. (Complaint, pp. 8-13).

Claim II alleges a federal cause of action under 42 U.S.C. § 1983 for "abuse of power," deprivation of Rivers' right to due process under the Fourteenth Amendment of the U.S. Constitution and malicious/constant "harassment" against Defendant Diaz for allowing his Hillsborough County Sheriffs Office (HCSO) subordinates to stop and search Rivers on September 7 and 9, 2004, and personally demanding that the deputies be given permission to search on September 7, 2004. (Complaint, pp. 13-17).

Claim III alleges a federal cause of action under 42 U.S.C. § 1983 for deprivation of Fourth and Fourteenth Amendment constitutional rights, and harassment against Defendants Eagon and Luckey for a traffic stop and search that Rivers alleges occurred on or about August 15, 2004.[1] (Complaint, pp. 17-19).

Claim IV alleges a federal cause of action under 42 U.S.C. § 1983 for conspiracy to deprive Rivers of his Fourteenth Amendment Constitutional rights, malicious prosecution, and interference with due process against Defendants Eagon, Tuminella and Luckey for alleged perjured testimony that they gave at a suppression hearing on February 11, 2005, in Federal Criminal Case Number: 8:04-cr-602-T-26MSS (hereinafter, Criminal Case). (Complaint, pp. 19-21).

Rivers seeks compensatory and punitive damages.

The Defendants filed a motion for summary judgment. (Doc. No. 35). Rivers filed a cross motion for summary judgment. (Doc. No. 36).  Rivers filed a response in opposition to Defendants' motion for summary judgment (Doc. No. 48) and Defendants filed a response in opposition to Rivers' cross motion for summary judgment (Doc. No. 38).  On January 7, 2008, the Court granted Defendants' motion to strike the oral and written orders of United States District Judge Richard Lazzara in case no. 8:04-cr-602-T-26MSS  related to the suppression of the evidence from the September 9, 2004, HCSO arrest and search of Rivers, as well as the Judge's comments and opinions regarding the Defendants' testimony and their actions. (See Doc. No. 34 and Doc. No. 63).

Factual Background

---

[1] Rivers' date is incorrect. The only contact between Rivers and Defendant Eagon in August 2004, took place on or about August 7, 2004. (See Exhibit 1 to Doc. 35, Eagon Affidavit).

During all of the times relevant to Rivers' Complaint, all of the defendants were sworn law enforcement officers, HCSO Deputy Sheriffs. Sergeant (now Lieutenant) Diaz was the supervisor of the other three defendants.

On or about August 7, 2004, Defendant Eagon, while performing her necessary duties, stopped Rivers at a stop sign at 12th Street and 139th Avenue because she claims he failed to stop at the stop sign at that intersection. (Exhibit 1 to Doc. No. 35, Eagon Affidavit). Defendant Luckey responded in support of Defendant Eagon, and essentially provided backup. (Exhibit 2 to Doc. No. 35, Luckey Affidavit). Defendant Eagon searched Rivers' vehicle because she claims she smelled the odor of marijuana as she approached the vehicle. However, Defendant Eagon did not find any marijuana or other contraband. (Exhibit 1 to Doc. No. 35, Eagon Affidavit). Defendant Eagon gave Rivers an oral warning but no traffic citation. (Exhibit 1 to Doc. No. 35, Eagon Affidavit).

On September 9, 2004, Defendants Tuminella and Eagon stopped the 1993 Chevrolet Suburban motor vehicle operated by Rivers at 127th Avenue, just west of 15th Street in Hillsborough County, Florida because they determined that the vehicle's allegedly loud muffler violated Florida law prohibiting excessive muffler or tailpipe noise. (Exhibit 1 to Doc. No. 35, Eagon Affidavit and Exhibit 3 to Doc. No. 35, Tuminella Affidavit).

Defendant Tuminella approached the vehicle from the driver's side, and claims he smelled the strong odor of burnt marijuana emanating from inside the vehicle. Defendant Eagon approached the vehicle from the opposite side. She claims to have smelled the distinct odor of fresh or green unsmoked marijuana. (Exhibit 1 to Doc. No. 35, Eagon Affidavit; Exhibit 3 to Doc. No. 35, Tuminella Affidavit).

Defendant Luckey once again arrived on the scene of the traffic stop to provide backup. When he got within 10 to 15 feet of Rivers' vehicle, he claims he also smelled the strong odor of fresh marijuana. (Exhibit 2 to Doc. No. 35, Luckey Affidavit). Defendant

Luckey also claims to have seen Rivers' vehicle shortly before his arrival and had noted that it had a very loud muffler.

Defendant Tuminella instructed Rivers to exit the vehicle, which Rivers did. Defendant Eagon entered and began to search Rivers' vehicle.  Defendant Luckey arrived on the scene, and took custody of Rivers.  Defendant Tuminella joined Defendant Eagon in searching Rivers' vehicle.   Defendant Tuminella located a small amount of what appeared to be marijuana on the floor board in the back seat of the vehicle.   After Defendant Luckey secured Rivers in one of the deputies' vehicles, Defendant Luckey assisted Defendants Eagon and Tuminella in searching Rivers' vehicle. Defendant Luckey found a loaded .40 caliber Taurus semi-automatic pistol concealed in the engine compartment of Rivers' vehicle. Later the deputies determined that the firearm was stolen. (Exhibit 3 to Doc. No. 35, Tuminella Affidavit; Exhibit 2 to Doc. No. 35, Luckey Affidavit). Rivers was arrested was for possession of marijuana, felon in possession of a firearm, and possession of a stolen firearm.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that they are entitled to qualified immunity on claims I, II, and III because they had probable cause, or arguable probable cause to stop Rivers and search his vehicle as well as Rivers himself on August 7, 2004, and September 9, 2004, and that they are entitled to absolute immunity on claim IV.  Defendants also contend that there is no genuine issue of fact for trial and they are entitled to summary judgment as a matter of law.[2]

As to claims I and III, Defendants allege that on both August 7, 2004 and September 9, 2004, the Defendants had probable cause to effect a traffic stop of Rivers' vehicle. *See Lee v. Farraro*, 284 F.3d 1188, 1194-95 (11th Cir. 2004)(Officer had probable cause to

---

[2]  The Court construes Defendants' argument that Rivers claims should be dismissed because he has failed to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure,  as a motion for summary judgment.

believe that subject had committed an offense under local noise ordinance, and stop was justified.); *Hudson v. Hall*, 231 F.3d 1289, 1295 (11th Cir. 2000)(citing *Wren v. United States,* 517 U.S. 806, 809 (1996) (minor traffic violation provides probable cause for traffic stop).

Defendants also contend that on both August 7, 2004, and September 9, 2004, they had probable cause to search Rivers' vehicle. *See State v. Betz*, 815 So.2d 627, 633 (Fla. 2002) (Florida Supreme Court found officer had probable cause to search a vehicle where officer smelled strong odor of marijuana coming out of car window).

As to claim II, Defendants allege that while Sergeant Diaz supervised the other defendants during all times relevant to Rivers' complaint, Sergeant Diaz was not present at the August 7, 2004, traffic stop, or at any subsequent traffic stop involving Rivers until September 9, 2004,[3] when he arrived after Defendants Eagon and Tuminella had made the stop. (Exhibit 6 to Doc. No. 35, Diaz Affidavit).

Defendants contend that Rivers has not demonstrated with any admissible evidence, nor has he alleged with appropriate specificity, that anything that Sergeant Diaz did, with regard to supervising the other Defendants, was improper, illegal or in violation of any aspect of Rivers' Fourteenth Amendment rights.

As to claim IV, Defendants allege that Rivers does not provide any admissible evidence that Defendants Eagon, Tuminella and Luckey actually perjured themselves at the February 11, 2005, suppression hearing in the Criminal Case.[4] However, Defendants argue that even if Rivers did provide admissible evidence of perjury, they have absolute immunity from liability in this civil suit for testimony at the suppression hearing. *Moore v.*

---

[3] Rivers alleges that Sergeant Diaz was present at, and participated in the September 7, 2004 stop and search.

[4] On January 7, 2008, the Court granted Defendants' motion to strike the oral comments and orders of Judge Lazzara in the Criminal Case. (Doc. No. 63).

*Macdonald*, 30 F.3d 616, 619 (5th Cir. 1994); *Holt v. Castaneda* 832 F.2d 123, 125 (9th Cir. 1987); *cert. denied*, 485 U.S. 979 (1988).

Defendants support their motion for summary judgment with exhibits, including the affidavits of Defendants Eagon, Luckey, Tuminella, and Sergeant Diaz, and several pages from Rivers' September 6, 2007 deposition and the transcript of Rivers' March 21, 2005 change of plea hearing in criminal case 8:04-cr-602-T-26MSS.   In the deposition and transcript excerpts, Rivers admitted that, in January 2004, he had a blunt "smushed out smoked joint" in his vehicle, and that he had unsmoked marijuana in his vehicle.  Because the deposition and transcript excerpts are not relevant to the traffic stops in August and September 2004, the Court is not considering them in ruling on the present matter.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Rivers contends that on or about August 15, 2004,[5] Defendant Eagon was not functioning as a reasonable officer when she  stopped Rivers, without probable cause, and unlawfully detained Rivers and searched his vehicle. He argues that she intended to fabricate any excuse necessary to stop and search his vehicle and harass him. Rivers contends that Defendant Eagon's affidavit is false and inconsistent with her testimony at the February 11, 2005, hearing in federal court where she said that she did not remember the reason for the stop but in her September 27, 2007 affidavit, she remembered that she stopped Rivers for failure to obey a stop sign.  He also contends that Defendant Eagon terminated the August 2004 traffic stop and search by ordering Rivers to "get his ass out of here before I lock your fucking ass up!"

Rivers contends that on September 9, 2004, Defendants Tuminella and Eagon did not act reasonably when they fabricated an excuse to stop Rivers' vehicle. He claims that the muffler on his vehicle did not violate any Florida law and that this fact [that his muffler is legal] "is demonstrated by Defendants' actions in not citing or warning Plaintiff during any

---

[5] This was the August 7, 2004 traffic stop.

other traffic stop.  Plaintiff's muffler was the exact system during all preceding illegal stops." (Doc. No. 48, Plaintiff's Response to Defendant's Motion for Summary Judgment, at p. 3).

Rivers contends that on September 9, 2004, Defendants Tuminella and Eagon did not smell any marijuana at all, either burnt or fresh green marijuana, because Rivers had not smoked nor transported marijuana in his vehicle. Rivers contends that Defendant Tuminella did not find any marijuana in his vehicle.

Standards of Review

Standard of Review for Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.' " *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir.2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir.1995)).

Once it is established that the Defendants were acting within their discretionary authority, the burden shifts to the Plaintiff to prove that qualified immunity is not warranted. *Vinyard*, 311 F.3d at 1346. The Supreme Court has articulated a two-part test in the qualified immunity analysis. First, the court must determine whether the plaintiff's allegations establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if, assuming the allegations are true, it pleads a cognizable violation of the constitution). If this is answered in the affirmative, the court's next step is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")). In essence, a defendant is entitled to "fair warning" that his alleged conduct would be unconstitutional. *Hope*, 536 U.S. at 741.

Rivers must satisfy both prongs set out in *Saucier* to establish the inappropriateness of extending qualified immunity to any Defendant in this matter. As the Supreme Court has announced: "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* at 202.

In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[A] public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002), (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)).

Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving

party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## DISCUSSION

### Claim I

Claim I alleges a federal cause of action under 42 U.S.C. § 1983 for deprivation of his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution; specifically, unlawful arrest/false imprisonment, and malicious harassment against Defendants Eagon, Tuminella and Luckey stemming from a traffic stop that resulted in Rivers' arrest on September 9, 2004. (Complaint, pp. 8-13).

### Qualified Immunity

It is undisputed that in stopping, searching, and arresting Rivers on September 9, 2004, Defendants Eagon, Tuminella, and Luckey were acting within the scope of their discretionary authority as law enforcement officers. Therefore, the burden shifts to Rivers to show that qualified immunity is not warranted. To meet his burden, Rivers must establish that it should have been clear to a reasonable deputy confronted with the facts and circumstances of September 9, 2004, that the stop, search, and arrest of Rivers was unlawful.

### The Stop

Defendants Eagon, Tuminella and Luckey state in their sworn affidavits that the reason for the September 9, 2004 traffic stop was Rivers' loud muffler. (Eagon Affidavit, Luckey Affidavit, and Tuminella Affidavit, Exhibits 1, 2, and 3 to Doc. No. 35). Rivers contends that the September 9, 2004, stop was unlawful and disputes that the sound of his muffler violated Florida law. He points out that he was stopped in the same vehicle on September 7, 2004, just two days before, and was not cited for having a loud muffler. In addition, he claims that the muffler on his vehicle did not violate any Florida law and that this fact [that his muffler is legal] "is demonstrated by Defendants' actions in not citing or

-10-

warning Plaintiff during any other traffic stop.  Plaintiff's muffler was the exact system during all preceding illegal stops."  Therefore, according to Rivers, Defendants Tuminella and Eagon did not act with reasonable or arguably reasonable probable cause when they stopped Rivers' vehicle on September 9, 2004.

However, a review of the motions, affidavits, and exhibits filed by both parties demonstrates that there is a question of fact as to whether Defendants acted with reasonable or arguably reasonable probable cause when they stopped Rivers' vehicle for a loud muffler on September 9, 2004.

The Search

On September 7, 2004, two days before the September 9, 2004, stop during which Rivers was arrested, Defendant Tuminella stopped Rivers in his 1993 Suburban. The stated reason for the September 7, 2004 stop was loud music.  Defendant Tuminella did not detect a loud muffler on Rivers' Suburban on September 7, 2004, and Tuminella did not cite him for having a loud muffler, although, according to Rivers, and undisputed by the Defendants, the 1993 Suburban had the same muffler system on September 7, 2004, that it had when Rivers was stopped for a loud muffler on September 9, 2004.

Rivers would not consent to a search of his vehicle on September 7, 2004; however, according to Rivers, Defendant Eagon conducted a search of his vehicle but found no contraband. The Defendants do not dispute Rivers' allegations about the September 7, 2004 stop and search.

On September 9, 2004, Defendants Tuminella and Eagon were participating in a traffic stop with other HCSO officers. Rivers, who was driving in the area, approached the the stop. When Rivers became parallel with the officers, Rivers observed Defendants Tuminella and Eagon "proceed toward a vehicle in a hurried manner." (Doc. 45-2, Rivers Affidavit, at pp. 4-5). Defendants Tuminella and Eagon followed Rivers, "intending to investigate the issue of a loud muffler" and stopped Rivers on the shoulder of 127th Avenue

and 15th Street. (Exhibit 1 to Doc. No. 39, Eagon Affidavit, at p. 3).  Defendant Eagon, "upon detecting the odor of marijuana" radioed for back up, and at that point realized that the occupant of the maroon Suburban was the same individual who had complained about a traffic stop one month earlier.  (Exhibit 1 to Doc. No. 39, Eagon Affidavit, at p. 3)

Defendant Luckey responded to Defendant Eagon's call for backup and arrived on the scene. (Exhibit 2 to Doc. No. 39, Luckey Affidavit at p. 4). Subsequently, Defendants Tuminella, Eagon, and Luckey searched Rivers' vehicle.

The Defendants' descriptions of the odors of marijuana emanating from Rivers' vehicle on September 9, 2004 are inconsistent.  Defendant Tuminella avers that when he came into contact with Rivers, while Rivers was still in the Suburban, Defendant Tuminella smelled the odor of burnt marijuana emanating from the vehicle. Defendant Luckey, however, avers that he could smell the strong odor of a large quantity of fresh marijuana, as opposed to burnt marijuana, ten to fifteen feet away from the vehicle. Finally, Defendant Eagon avers that she could smell the strong odor of fresh marijuana, as opposed to burnt marijuana, a few feet from the vehicle.

The only quantity of "contraband" found in Rivers' vehicle was a small amount of plant residue that was discovered by Defendant Tuminella after Defendant Eagon had conducted what she admitted was a diligent search of the same area, a search so diligent and thorough that she even resorted to dismantling Rivers' audio and video accessories. The residue was submitted to the Florida Department of Law Enforcement (FDLE) on September 9, 2004 for analysis. On February 25, 2005, the FDLE found that the alleged marijuana was plant material with "insufficient characteristics for cannabis identification." (Exhibit B to Rivers' Motion for Summary Judgment, Doc. No. 36). The Defendants' collective description regarding a strong odor of burnt or a large quantity of fresh marijuana which could be detected up to more than fifteen feet from the vehicle, coupled with the

result of the search, which was a minute quantity of plant material later found not to be marijuana, is not credible.

Taking the facts in the light most favorable to Plaintiff Rivers, and resolving all reasonable doubts in his favor, it would have been clear to a reasonable deputy confronted with the facts and circumstances of September 9, 2004, that the stop, search, and arrest of Rivers was unlawful. Accordingly, Defendants Eagon, Tuminella, and Luckey are not entitled to qualified immunity on Claim I.

Claim II

> Claim II alleges a federal cause of action under 42 U.S.C. § 1983 for "abuse of power," deprivation of Rivers' right to due process under the Fourteenth Amendment of the U.S. Constitution and malicious/constant "harassment" against Defendant Diaz for allowing his Hillsborough County Sheriffs Office (HCSO) subordinates to stop and search Rivers on September 7 and 9 and personally demanding that the deputies be given permission to search on September 7, 2004. (Complaint, pp. 13-17).

Qualified Immunity

It is undisputed that at all relevant times, Sergeant Diaz was acting within the scope of his discretionary authority as a law enforcement officer. Therefore, the burden shifts to Rivers to show that qualified immunity is not warranted. To meet his burden, Rivers must first establish that Sergeant Diaz's actions or his alleged improper supervision of his officers establish a constitutional violation. In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the Supreme Court stated that if the facts "[t]aken in the light most favorable to the party asserting the injury" show that the officer's conduct did not violate a constitutional right, the inquiry ends there. *Id.*

Rivers has not shown that any action by Sergeant Diaz rose to the level of a constitutional violation. Rivers alleges that Sergeant Diaz failed to reprimand Deputies Eagon and Luckey after the August 15, 2004,[6] traffic stop even though Rivers and

---

[6] This was actually the August 7, 2004 traffic stop. Rivers has not shown that the August 7, 2004 stop was illegal, although he complained to Sergeant Rivers that Defendants Eagon and Luckey illegally stopped his vehicle, and that Defendant Eagon illegally searched his vehicle while Defendant Luckey detained Rivers and

-13-

members of his family reported the "illegal" stop; that Sergeant Diaz demanded that he or his officers be granted permission to search Rivers' vehicle at the September 7, 2004 traffic stop; that Sergeant Diaz ordered Rivers to be held at the location of the September 7, 2004 traffic stop until a K-9 unit arrived; that Sergeant Diaz witnessed Defendant Eagon searching Rivers' vehicle at the September 7, 2004 traffic stop; and that Sergeant Diaz sat in his car observing the September 9, 2004 traffic stop and search.  None of these actions rise to the level of a constitutional violation.  Rivers is attempting to hold Sergeant Diaz liable under the theory of respondeat superior. Respondeat superior, however, is not actionable in 42 U.S.C. §1983 complaints. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985).

Sergeant Diaz is entitled to qualified immunity on Claim II.

## Claim III

Claim III alleges a federal cause of action under 42 U.S.C. § 1983 for deprivation of Fourth and Fourteenth Amendment constitutional rights, and harassment against Defendants Eagon and Luckey for a traffic stop and search that Rivers alleges occurred on or about August 15, 2004.[7] (Complaint, pp. 17-19).

## Qualified Immunity

It is undisputed that on August 7, 2004, the actual date of the traffic stop, Defendants Eagon and Luckey were acting within their discretionary authority as law enforcement officers.  Therefore, the burden shifts to Rivers to show that reasonable officers faced with the same facts and circumstances of August 7, 2004, would know that their actions were unlawful.  Rivers has not met his burden.

## The Stop

In her affidavit, Defendant Eagon avers that on August 7, 2004, she observed a maroon Chevrolet Suburban [operated by Rivers] fail to obey a stop sign at 12th Street and

his passenger.

[7] This was the August 7, 2004 stop.

139th Avenue. As a result of the traffic violation, she stopped Rivers. (Defendants Exh. 1 to Doc. No. 35 - Eagon Affidavit).  Rivers' failure to stop at a stop sign is a Florida traffic code violation. *See Chapter 316, section 316.125, Florida Statutes.*

In *Whren v. United States*, 517 U.S. 806,  810 (1996) the United States Supreme Court held that when there is a finding that the police had probable cause to believe that the party had committed a traffic code violation, a stop is "reasonable" under the Fourth Amendment. The *Whren* Court rejected an analysis based on an inquiry into the subjective state-of-mind of the individual police officer to determine whether the stop was pretextual; instead, the Court looked solely to the objective factor of whether the district court had found probable cause to justify a detention based on a traffic violation. *See United States v. Griffin*, 109 F.3d 706 (11th Cir. 1997). The fact that a Plaintiff may not be issued  a citation is not dispositive of whether the stop was pretextual and illegal. *Springle v. State*, 613 So. 2d 65, 66-67 (Fla. 4th DCA 1993)(reversed on other grounds, *Smith v. State*,  641 So.2d 849 (1994)).

"[A]ctual probable cause is not necessary for an arrest to be objectively reasonable." *Ramos v. Sedgwick County Sheriff's Department*, 785 F.Supp. 1457, 1459 (S.D. Fla. 1991), and Defendants are still entitled to the protections of qualified immunity if they mistakenly conclude that probable cause is present. *Id.* If they have "arguable" probable cause, they are immune from being held personally liable under Title 42, United States Code, Section 1983. *Id.*

Defendant Eagon had arguable probable cause to stop Rivers on August 7, 2004 based on Rivers' failure to stop at a stop sign, a Florida traffic code violation.

The Search

Defendant Eagon states that as she approached the vehicle, she detected the odor of marijuana. She states that, in accordance with Florida law, she conducted a search of

the vehicle, but did not find any contraband. She also states that she released Rivers without a written citation, "after a verbal warning." (Exh. 1 to Doc. No. 35, Eagon Affidavit.)

In his affidavit, Defendant Luckey states that he did not recall the exact date or time of the "early August 2004" traffic stop, but that he recalled it was daylight. He states that he heard Defendant Eagon was going to make the stop from her radio transmission and responded. When he arrived at the scene, Defendant Eagon advised him that she had detected the smell of marijuana in Rivers' vehicle. At that time, Defendant Eagon had Rivers and his passenger step out of the vehicle and Defendant Luckey patted down the passenger. Defendant Luckey stood with Rivers and the passenger while Defendant Eagon searched Rivers' vehicle. (Exhibit 2 to Doc. No. 35, Luckey Affidavit).

It is well-established that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *U.S. v. Lueck*, 678 F.2d 895, 903 (11th Cir.1982). *See also U.S. v. Tobin*, 923 F.2d 1506, 1512 (11th Cir.1991). Furthermore, the probable cause to search extends to the occupants of the vehicle. *See State v. Betz*, 815 So.2d 627, 633 (Fla.2002) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)) *See, e.g., State v. T.P.*, 835 So.2d 1277 (Fla. 4th DCA 2003); *State v. K.V.*, 821 So.2d 1127, 1128 (Fla. 4th DCA 2002); *Blake v. State*, 939 So.2d 192 (Fla. 5th DCA 2006); *State v. Hernandez*, 706 So.2d 66 (Fla. 2d DCA 1998). Deputy Eagon avers that she noticed the smell of marijuana emanating from Rivers' vehicle during the traffic stop in August 2004.

Therefore, Defendant Eagon had probable cause to search Rivers' vehicle and Defendant Luckey had probable cause to pat down Rivers' passenger. When confronted with the facts and circumstances of August 7, 2004, it would have been clear to a reasonable deputy that the stop and search were lawful. Defendants Eagon and Luckey are entitled to qualified immunity on Claim III.

Claim IV

Claim IV alleges a federal cause of action under 42 U.S.C. § 1983 for conspiracy to deprive Rivers of his Fourteenth Amendment Constitutional

rights, malicious prosecution, and interference with due process against Defendants Eagon, Tuminella and Luckey for alleged perjured testimony that they gave at a suppression hearing on February 11, 2005, in Federal Criminal Case Number: 8:04-cr-602-T-26MSS (hereinafter, Criminal Case). (Complaint, pp. 19-21).

Defendants Eagon, Tuminella, and Luckey are entitled to absolute immunity from suit and liability for their testimony at the February 11, 2005, pre-trial suppression hearing in the federal Criminal Case. The Supreme Court of the United States has held that police officers are absolutely immune from liability in a civil rights suit filed in accordance with Title 42, United States Code, Section 1983 for their testimony at trial. *Briscoe v. LaHue*, 460 U.S. 325 (1983).

Rivers alleges that that the law enforcement officers who testified at a pre-trial suppression hearing perjured themselves. Notwithstanding the fact that the Defendants all deny perjuring themselves, they are entitled to absolute immunity from suit and liability for their testimony at the pre-trial suppression hearing. *Moore v. McDonald* 30 F.3d 616, 619 (5th Cir. 1994); *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir. 1987); *Williams v. Hepting,* 844 F.2d 138 (3rd Cir. 1988); *Strength v. Hubert,* 854 F.2d 421 (11th Cir. 1988)(absolute immunity in Eleventh Circuit for public official testifying at Grand Jury). In sum, "witnesses who testify in court at adversarial pre-trial hearings are absolutely immune from liability under section 1983 for damages allegedly caused by their testimony. *Moore* at 619; *Holt* at 127.

### No Allegations Against Defendants in their Official Capacities

Although the style of Rivers' complaint indicates that he is suing Defendants in their official and individual capacities, Rivers has failed to allege claims against Defendants in their official capacities.  To do so, Rivers would have to establish that the alleged deprivations resulted from a custom or policy set by Hillsborough County. *Hafer v. Melo*,

502 U.S. 21 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978).[8]

Rivers has neither made such allegations nor brought forth specific facts tending to establish the existence of such a policy or custom. "[w]here, as here, a section 1983 plaintiff sues government employees in their official capacities, the suit is in actuality against the governmental entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir.1990). In order to hold Hillsborough County liable, Rivers must show that a "governmental 'policy or custom' is the 'moving force' behind the constitutional violation." *Id.* Rivers has not so alleged in his complaint.

<u>RIVERS' MOTION FOR SUMMARY JUDGMENT</u>

The findings set out above preclude the Court's granting Rivers' motion for summary judgment. In sum, genuine issues of material fact remain for trial as to claim one. Defendant Diaz is entitled to qualified immunity as to claim two. Defendants Eagon and Luckey are entitled to qualified immunity as to claim three. Defendants Eagon, Luckey, and Tuminella are entitled to absolute immunity as to claim four.  Finally, Rivers has failed to allege claims against Defendants in their official capacities.

**Accordingly, the Court orders:**

1. That Defendants Eagon's, Luckey's and Tuminella's motion for summary judgment based on qualified immunity as to the traffic stop, search, and arrest of Rivers on September 9, 2004 (Doc. No. 35, Claim I) is denied.

2. That Sergeant Diaz's motion for summary judgment based on qualified immunity (Doc. No. 35, Claim II) is granted.

---

[8] In *Hafer*, the Supreme Court clarified its determinations in *Kentucky v. Graham*, 473 U.S. 159 (1985) and stated that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Hafer,* 502 U.S. at 25.

3. That Defendants Eagon's and Luckey's motion for summary judgment based on qualified immunity as to the traffic stop and search on August 7, 2004 (Doc. No. 35, Claim III) is granted.

4. That Defendants Eagon's, Luckey's, and Tuminella's motion for summary judgment based on absolute immunity as to their testimony at the February 11, 2005 pre-trial suppression hearing in federal criminal case 8:04-cr-602-T-26MSS (Doc. No. 35, Claim IV) is granted.

5. That Rivers' claims against all Defendants in their official capacity are dismissed.

6. That Rivers' motion for summary judgment (Doc. No. 36) is denied.

ORDERED at Tampa, Florida, on March 27, 2008.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Shanta Tori Rivers